1
2
3
4
5
6
7                          UNITED STATES DISTRICT COURT

8                     FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   WILLIAM JAMES HARRIS,                    No.  2:12-cv-02846-LKK-AC

11                 Petitioner,

12        v.                                  ORDER & FINDINGS AND
                                             RECCOMENDATIONS
13   TIM VIRGA,

14                 Respondent.

15

16        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner is serving a sentence of fifty-three years

18   following his 1998 conviction on thirteen charges of second-degree armed robbery, one charge of

19   attempted second degree robbery, one charge of assault and battery, and two charges of false

20   imprisonment.  The petition was filed on November 20, 2012 and claims that the state trial court

21   violated petitioner's Fifth and Sixth Amendment rights when it sentenced him to consecutive

22   sentences "for crimes committed on same occasion with single intent within close temporal

23   proximity."  Petitioner also claims that the state trial court violated his due process rights when it

24   sentenced him to the statutory upper terms for his offenses in violation of the rule stated by the

25   United States Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000).

26        Respondent has filed a motion to dismiss the petition as untimely.  ECF No. 15.

27   Petitioner opposes this motion (ECF No. 24) and respondent has filed a reply to petitioner's

28   opposition (ECF No. 30).

                                               1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANALYSIS

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the Petitioner is not entitled to relief in the district court . . . ."  The Ninth Circuit Court of Appeals has referred to a respondent's motion to dismiss as a request for the court to dismiss under Rule 4 of the Rules Governing § 2254 Cases.  See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (1991); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982).  Accordingly, the court will review respondent's motion to dismiss pursuant to its authority under Rule 4.

I.      The Statute of Limitations and Statutory Tolling Under 28 U.S.C. § 2244

As amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), the statutory scheme governing federal habeas proceedings provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Section 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period.  28 U.S.C. § 2244(d)(2).  Generally, this means that the statute of limitations is tolled during the time after a state habeas petition has

2

1  been filed, but before a decision has been rendered.  Nedds v. Calderon, 678 F.3d 777, 780 (9th

2  Cir. 2012).  However, "a California habeas petitioner who unreasonably delays in filing a state

3  habeas petition is not entitled to the benefit of statutory tolling during the gap or interval

4  preceding the filing."  Id. at 781 (citing Carey v. Saffold, 536 U.S. 214, 225-27 (2002)).

5  Furthermore, the AEDPA "statute of limitations is not tolled from the time a final decision is

6  issued on direct state appeal and the time the first state collateral challenge is filed because there

7  is no case 'pending' during that interval."  Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999),

8  overruled on other grounds by Carey v. Saffold, 536 U.S. 214 (2002).  In Carey v. Saffold, 536

9  U.S. 214 (2002), the United States Supreme Court held that the limitation period is statutorily

10  tolled during one complete round of state post-conviction review, as long as such review is sought

11  within the state's time frame for seeking such review.  Id. at 220, 222-23.  State habeas petitions

12  filed after the one-year statute of limitations has expired do not revive the statute of limitations

13  and have no tolling effect.  See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003);

14  Jimenez v. Rice, 276 F.3d 478, 482 (9th Cir.2001); Green v. White, 223 F.3d 1001, 1003 (9th Cir.

15  2000) (petitioner is not entitled to tolling where the limitations period has already run).

16      II.    Procedural Facts

17          For purposes of timeliness analysis, the relevant chronology of this case is as follows:

18          1.  Petitioner was convicted on October 26, 1998 in the Sacramento County Superior

19               Court.  See Lodged Document No. 1.

20          2.  On March 22, 2000, the California Court of Appeal for the Third Appellate District

21               affirmed petitioner's conviction.[1]  See Lodged Document No. 2.

22          3.  On June 29, 2001, petitioner filed his first petition for writ of habeas corpus in the

23               California Supreme Court.[2]  This petition was denied on October 31, 2001. See

24               Lodged Document Nos. 3-4.

25  _____

26  [1] The state appeals court struck an enhancement to count 3 of the charges for which petitioner had
    been convicted.  The court otherwise affirmed the trial court's sentencing judgment.

27  [2] The petition was signed and dated by petitioner on June 29, 2001, which appears to be the date it
    was delivered to prison officials for mailing to the court.  That date is therefore deemed its filing
    date.  See Houston v. Lack, 487 U.S. 266 (1988).

28

4.  On April 15, 2008, petitioner filed a second petition for writ of habeas corpus in the Sacramento County Superior Court, which was denied on May 27, 2008.  See Lodged Document Nos. 5-6.

5.  On May 13, 2009, petitioner filed a third petition for writ of habeas corpus in the California Court of Appeals Third Appellate District, which was denied on May 21, 2009.  See Lodged Document Nos. 7-8.

6.  On November 24, 2009, petitioner filed a fourth petition for writ of habeas corpus in the California Supreme Court.  That petition was denied on June 9, 2010, citing, *inter alia*, In re Robbins, 18 Cal.4th 770, 780 (1998).  See Lodged Document Nos. 9-10.

7.  On September 29, 2010, petitioner filed a fifth petition for writ of habeas corpus in the Sacramento County Superior Court.[3]  This petition was denied on November 18, 2010. See Lodged Document Nos. 11-12.

8.  On May 31, 2011, petitioner filed a sixth petition for writ of habeas corpus in the California Court of Appeals Third Appellate District, which was summarily denied by order on June 2, 2011.  See Lodged Document Nos. 13-14.

9.  On June 16, 2011, petitioner filed a seventh petition for writ of habeas corpus in the California Supreme Court.[4]  This petition was denied on November 16, 2011, citing In re Robbins, 18 Cal.4th 770, 780 (1998) and In re Clark 5 Cal.4th 750, 767-69.  See Lodged Document Nos. 15-16.

10. Petitioner filed the instant action on November 20, 2012, which petition was signed November 18, 2012.[5]

---

[3] The petition was signed and dated by petitioner on September 29, 2010, which appears to be the date it was delivered to prison officials for mailing to the court.  That date is therefore deemed its filing date.  See Houston v. Lack, 487 U.S. 266 (1988).

[4] That petition was signed and dated by petitioner on June 16, 2011, which appears to be the date it was delivered to prison officials for mailing to the court.  That date is therefore deemed its filing date.  See Houston v. Lack, 487 U.S. 266 (1988).

[5] This action is deemed filed on the date the original petition was delivered to prison officials for mailing.  See Houston v. Lack, 487 U.S. 266, 270-71 (1988).

4

1     III.    Application of Statutory Principles

2            The California Court of Appeal affirmed petitioner's conviction on March 22, 2000, and

3     petitioner did not seek further review of his conviction in the California Supreme Court.[6]

4     Accordingly, his conviction became final on May 1, 2000.  See California Rules of Court

5     8.366(b)(1) (decision of Court of Appeal is final in that court 30 days after filing), 8.500(e)(1)

6     (party has 10 days after finality in Court of Appeal to seek review in the California Supreme

7     Court).  The limitations period therefore commenced on May 2, 2000,[7] and absent tolling the

8     federal petition was due on or before May 1, 2001.

9            Petitioner did not file his first state petition in the California Supreme Court until June 29,

10    2001, see Lodged Document No. 3, fifty-eight days after the federal limitations period had run its

11    course.  None of petitioner's seven petitions in state court operated to toll the limitations period

12    because they were all filed after the limitations period had expired and there was nothing left to

13    toll.  See Jimenez, 276 F.3d at 482.  The instant action, filed November 20, 2012, is therefore

14    time-barred unless petitioner is entitled to equitable tolling of the limitations period.

15

16    _____

17    [6] In the instant habeas corpus petition, petitioner alleges that he did seek further direct review of his case by filing an appeal in the California Supreme Court, which was denied on October 31,

18    2000.  (ECF No. 1 at 2.)  However, petitioner fails to include any supporting documentation or even a filing number for this court's consideration.  Nevertheless, a review of petitioner's prior

19    state habeas petitions indicates that the decision petitioner refers to was actually his first state habeas petition that he had filed with the California Supreme Court which was denied on October

20    31, 2001.  See Lodged Document Nos. 4, 11 at 5.  It appears that petitioner has erroneously stated that his first state habeas petition constituted a direct appeal.  Accordingly, in the absence of any

21    other evidence indicating that petitioner did file for further direct review of his conviction in the California Supreme Court, the court finds that petitioner case became final for purposes of §

22    2244(d)(1)(A) on May 1, 2001.

      [7] The court finds that the other three possible commencement dates provided in 28 U.S.C. §

23    2244(d)(1)(B)-(D) do not apply in this case.  Petitioner has failed to show that illegal conduct by

24    the state or those acting for the state actually prevented petitioner from preparing or filing a timely federal habeas petition, thus making subsection B of section 2244(d)(1) inapplicable.

25    Subsection C of section 2244(d)(1) also does not apply because petitioner does not assert any claim based on a constitutional right "newly recognized by the Supreme Court and made

26    retroactively applicable to cases on collateral review."  Finally, petitioner does not argue, and the record does not show, that section 2244(d)(1)(D) furnishes an accrual date later than May 2, 2000

27    for petitioner's claims.

28

1     IV.     Actual Innocence

2              In opposition to the motion, petitioner contends that he is actually innocent of the charges

3     of which he was convicted.  ECF No. 24 at 10-17.  A showing of actual innocence supports an

4     equitable exception to the statute of limitations.  Lee v. Lampert, 653 F.3d 929, 937 (9th Cir.

5     2011) (en banc); McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).  "[W]here an otherwise

6     time-barred habeas petitioner demonstrates that it is more likely than not that no reasonable juror

7     would have found him guilty beyond a reasonable doubt, the petitioner may pass through the

8     Schlup [v. Delo, 513 U.S. 298 (1995)[8]] gateway and have his constitutional claims heard on the

9     merits."  Lee, 653 F.3d at 937; accord, McQuiggin, 133 S.Ct. at 1928.

10             A petitioner claiming actual innocence must satisfy the Schlup standard by demonstrating

11    "that it is more likely than not that no reasonable juror would have convicted him in the light of

12    the new evidence."  Lee, 653 at 938.  Actual innocence in this context "means factual innocence,

13    not mere legal insufficiency."  Bousley v. United States, 523 U.S. 614, 623-24 (1998); Sawyer v.

14    Whitley, 505 U.S. 333, 339 (1992) (citing Smith v. Murray, 477 U.S. 527 (1986)); Jaramillo v.

15    Stewart, 340 F.3d 877, 882-83 (9th Cir. 2003) (accord).  To make a credible claim of actual

16    innocence, petitioner must produce "new reliable evidence – whether it be exculpatory scientific

17    evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented

18    at trial."  Schlup v. Delo, 513 U.S. 298, 324 (1995).  The habeas court then considers all the

19    evidence: old and new, incriminating and exculpatory, admissible at trial or not.  House v. Bell,

20    547 U.S. 518, 538 (2006).  On this complete record, the court makes a "'probabilistic

21    determination about what reasonable, properly instructed jurors would do.'"  Id. (quoting Schlup,

22    513 U.S. at 330).

23             Petitioner contends that the following evidence shows that he is actually innocent of the of

24    the crimes of attempted robbery (Count 6), armed robbery (Counts 8, 9, 10, 12, 13, and 15), and

25    false imprisonment (Counts 16 and 17):

26    _____

27    [8] In Schlup, the Supreme Court announced that a showing of actual innocence could excuse a
      procedural default and permit a federal habeas court to reach the merits of otherwise barred
28    claims for post-conviction relief.

Count 6: attempted robbery of Sheree Pina; the witnesses stated on the record that petitioner was not the perpetrator who ruffled through her brief case or had any contact with her whatsoever. No other evidence exist [sic] to establish that fact. . . . Count 8: armed robbery of Anthony Apilado; the record illustrates that he could not make a positive identification of the perpetrator testifying: "One of the robbers is not in the courtroom." No other evidence exist [sic] to establish petitioner committed the offense. . . .

Count 9: armed robbery of Regina Apilado; the record illustrates that Ms. Apilado could not identify petitioner as being the perpetrator of the offense. No other evidence exist [sic] to establish that fact. . . .

Count 10: armed robbery of Gregory Curo; the record illustrates that Mr. Curo testified that he could not make an identification "beyond a reasonable doubt" that petitioner committed the offense. No other evidence exist [sic] placing petitioner at the crime scene. . . .

Count 12: armed robbery of James Estelle; the record illustrates that Mr. Estelle testified that petitioner was not the perpetrator of the crime. He never made an identification of anyone as the perpetrator. No other evidence exist [sic] that places petitioner at the crime scene.

Count 13: armed robbery of Kristina Rozman McLemore; the record illustrates that Ms. McLemore testified that she could not identify the perpetrator in the photo line-up (that included petitioner) except that the eyes could look the same as petitioner's, but she was not 100% sure even about that. No other evidence exist [sic] against petitioner on this offense. . . .

Count 15: armed robbery of Lanny P. Olis; Ms. Olis testified that she could not identify any of the perpetrators. The only evidence linking petitioner to counts 15-17 is that a fingerprint was allegedly found in what became debatable throughout the testimony as to whether the area was publicly accessible. The records stated that a Nicorette gum stand was located for customers behind the counter that is publicly accessible by a couple of inches. The only identification witness testified that could he [sic] not identify petitioner as the perpetrator wearing gloves on both hands.

Count 16: false imprisonment of Peter Fleenor; Mr. Fleenor testified that petitioner, for purposes of identification, was never in the store. . . .

Count 17: false imprisonment of Greg Mitchell; Mr. Mitchell testified that he also could not identify the perpetrator of the offense, neither as petitioner nor in general.

ECF No. 24 at 12-14.

None of this evidence is "newly discovered" or "newly presented" for purposes of

1    petitioner's actual innocence claim; rather, it is all testimony that was given during petitioner's

2    criminal trial in state court.  Perhaps in recognition of this fact, petitioner argues "that it has been

3    clearly established now, since Bousley v. U.S., 523 U.S. 614 (1998), and its progeny, that there is

4    no requirement for proffering either 'newly discovered' or 'newly presented' evidence in support

5    of a claim for actual innocence of a sentence, or where a statute does not reach the conduct of a

6    petitioner."  ECF No. 24 at 14-15.  Petitioner further insists that the court use the Bousley

7    standard rather than the "newly discovered" or "newly presented" standard developed in Schlup.

8    Id.  Petitioner misapprehends the significance of Bousley.

9          Bousley involved the validity of a guilty plea to a charge of using a firearm in violation of

10   18 U.S.C. § 924(c)(1).  The petitioner collaterally challenged the factual basis for and

11   voluntariness of his plea, but the claim was rejected as procedurally defaulted.  While the appeal

12   of the denial of petitioner's motion under 28 U.S.C. § 2255 was pending, the U.S. Supreme Court

13   clarified the scope of § 924(c) liability in Bailey v. United States, 516 U.S. 137 (1995).  The issue

14   presented in Bousley was whether the petitioner could attempt to overcome his default on actual

15   innocence grounds in light of Bailey.  The Court held that a showing of actual innocence of

16   firearm use would permit petitioner to challenge the voluntariness of his plea.  Bousley, 523 U.S.

17   at 624.  Bousley has no application to a case such as this one, in which a prisoner convicted

18   following a trial brings an actual innocence claim on the basis of evidence previously considered

19   during that trial.  Hunt v. Kernan, 2008 WL 2446064 (C.D. Cal. June 17, 2008).

20         Moreover, nothing in Bousley purported to alter the requirements of Schlup.  The Court in

21   Bousley expressly quoted Schlup's actual innocence standard.  Bousley, 523 U.S. at 623 (quoting

22   Schlup, 513 U.S. at 327-28).  Since Bousley, the Supreme Court has reaffirmed Schlup's

23   requirement that a credible showing of actual innocence be predicated on "new reliable

24   evidence."  See House v. Bell.  547 U.S. at 537-38; see also McQuiggin, 133 S.Ct.at 1928

25   (analytical framework articulated in Schlup and House governs actual innocence exception to

26   AEDPA's statute of limitations).  For these reasons, the court rejects petitioner's attempt to

27   circumvent the requirement that he present "new reliable evidence. . .  that was not presented at

28   trial."  Schlup, 513 U.S. at 324.

8

1    Petitioner also submits a declaration "illustrating what his testimony would have been had

2    his trial counsel allowed him to testify."  ECF No. 24 at 15-16, Exhibit A.  In his declaration,

3    petitioner states: "Had I testified in the trial, I would have said that I did not rob these places in

4    Counts 6, 8, 9, 10, 12, 13, 15, 16, and 17.  I would have also testified that I do remember

5    committing the remaining counts alleged in the Accusatory Pleading."  Id. at pages 3-4 of Exhibit

6    A.  Even assuming that such a declaration constitutes "newly discovered" or "newly presented"

7    evidence, these statements fail to satisfy Schlup's reliability requirement.  A petitioner's

8    uncorroborated and self-serving protestation of innocence does not bear any of the hallmarks of

9    reliability suggested by Schlup.  See Schlup, 513 U.S. at 324 ("reliable evidence" includes

10   "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").

11   Petitioner has not met the heavy burden of demonstrating that "no reasonable juror would have

12   convicted him" in light of the new evidence.  See id. at 329.

13       For all these reasons, petitioner's assertion of actual innocence does not excuse the

14   untimeliness of his petition.

15       V.    Equitable Tolling

16       AEDPA's one-year limitation period may be equitably tolled "in appropriate cases."

17   Holland v. Florida, 130 S. Ct. 2549, 2560 (2010); accord Bills v. Clark, 628 F.3d 1092, 1097 (9th

18   Cir. 2010).  Equitable tolling presents a "high hurdle" for petitioners, however, and should be

19   invoked only if extraordinary circumstances beyond a prisoner's control make it impossible for

20   him to timely file a petition.  See Bills, 628 F.3d at 1097 (quoting Miranda v. Castro, 292 F.3d

21   1063, 1066 (9th Cir. 2002)) ("Indeed, 'the threshold necessary to trigger equitable tolling [under

22   AEDPA] is very high, lest the exceptions swallow the rule.'").  "[A] litigant seeking equitable

23   tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights

24   diligently, and (2) that some extraordinary circumstance stood in his way."  Pace v. DiGuglielmo,

25   544 U.S. 408, 418 & n.8 (2005).  "The diligence required for equitable tolling purposes is

26   'reasonable diligence,' not 'maximum feasible diligence.'"  Ford v. Gonzalez, 683 F.3d 1230,

27   1237 (9th Cir. 2012) (quoting Bills, 628 F.3d at 1097, in turn quoting Holland, 130 S. Ct. at

28   2565).  "The 'general rule' is that 'equitable tolling is available where the prisoner can show

9

1   extraordinary circumstances were the cause of an untimely filing.'" Id. (quoting Bills, 628 F.3d

2   at 1097). Under the case law of this circuit, "equitable tolling is available for this reason only

3   when extraordinary circumstances beyond a prisoner's control make it *impossible* to file a petition

4   on time and the extraordinary circumstances were the *cause* of [the prisoner's] untimeliness." Id.

5   (quoting Bills, 628 F.3d at 1097) (emphasis in original). Equitable tolling will be unavailable in

6   most cases. See Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002); Miles v. Prunty, 187 F.3d

7   1104, 1107 (9th Cir. 1999).

8          Petitioner's allegations present three possible bases for equitable tolling, which are now

9   addressed in turn.

10         A.  Deficiency of Appellate Counsel

11         First, and specific to his Sixth Amendment sentencing claim based on Apprendi v. New

12  Jersey, 530 U.S. 466 (2000), petitioner contends his appellate counsel acted ineffectively by

13  failing to discover the pendency of Apprendi in the United States Supreme Court during the

14  pendency of petitioner's direct appeal, and failing to seek a stay of petitioner's appeal until

15  Apprendi was decided.[9]  ECF No. 24 at 17-19.

16         Under a very limited set of circumstances, equitable tolling may be available where the

17  untimeliness of a petition is caused by misconduct committed by the petitioner's attorney. See

18  Holland, 130 S. Ct. at 2564; Porter v. Ollison, 620 F.3d 952, 959 (9th Cir. 2010). Those

19  _____

20  [9] Petitioner does not directly argue that his appellate attorney's misconduct constitutes grounds
    for equitable tolling. Rather, petitioner asserts that his attorney's alleged misconduct was

21  sufficient to demonstrate cause and prejudice for purposes of overcoming procedural default of
    his Apprendi claim, which he states is still unexhausted because the California Supreme Court

22  dismissed the claim as untimely in its November 16, 2011 order (Lodged Document No. 16).
    ECF No. 24 at 4-10, 17-21. Generally, procedural default is a defense that the respondent must

23  affirmatively raise. See Nardi v. Stewart, 354 F.3d 1134, 1141 (9th Cir. 2004), abrogated on
    other grounds by, Day v. McDonough, 547 U.S. 198 (2006) ("[T]he state waives its statute of

24  limitations defense by filing a responsive pleading that fails to affirmatively set forth the
    defense."). Here, respondent has not raised a procedural default defense in his motion to dismiss;

25  rather, respondent claims only that petitioner failed to file within the AEDPA's statute of
    limitations. Because respondent does not affirmatively claim that petitioner has procedurally

26  defaulted any of his claims, the court disregards petitioner's arguments regarding procedural

27  default. Instead, the undersigned construes petitioner's allegations as proffered basis for
    equitable tolling.

28

10

1  circumstances involve only "attorney misconduct that is sufficiently egregious to meet the

2  extraordinary misconduct standard." Porter, 620 F.3d at 959; see also Spitsyn v. Moore, 345 F.3d

3  796, 799 (9th Cir. 2003) (holding that petitioner's attorney's complete failure to prepare and file

4  petitioner's habeas petition constituted sufficiently egregious misconduct for tolling purposes

5  when the attorney was retained a year in advance of the filing deadline and petitioner repeatedly

6  contacted the attorney about filing the petition).  "Garden variety" claims of attorney neglect

7  including the "miscalculation of a filing deadline" and other forms of negligence are an

8  insufficient basis for tolling the limitations period.  Holland, 130 S. Ct. at 2564.  Regardless of the

9  attorney's neglect, the petitioner must still act with reasonable diligence in seeking to file his

10  petition.  Porter, 620 F.3d at 959 (citing Spitsyn, 345 F.3d at 802).

11      Here, petitioner alleges that his appellate counsel acted deficiently by not discovering the

12  pendency of Apprendi and seeking a stay of proceedings in the California Court of Appeal until

13  Apprendi was decided so that it could be applied to petitioner's case.  ECF No. 24 at 17-19.  This

14  allegation fails to demonstrate egregious misconduct.  The United States Supreme Court did not

15  issue its opinion in Apprendi until June 26, 2000, over three months after the California appeals

16  court affirmed petitioner's conviction on March 22, 2000.  Appellate counsel's failure to raise a

17  claim that was non-existent at the time of the relevant proceedings does not constitute egregious

18  misconduct, nor does failing to have the proceedings stayed in expectation of a legal development

19  that has not yet occurred.  See Moore v. Mitchell, 708 F.3d 760, 793 (6th Cir. 2013) ("Appellate

20  counsel must be competent, not clairvoyant; failing to make a then-non-existent claim . . . was not

21  deficient performance and cannot have prejudiced [the petitioner].").  Accordingly, the actions

22  petitioner alleges do not amount to egregious attorney misconduct sufficient to equitably toll the

23  statutory period under section 2244(d)(1).

24      Moreover, petitioner fails to sufficiently allege how his appellate counsel's actions caused

25  him to delay filing his federal habeas petition until well after the statute of limitations had run its

26  course.  Petitioner argues that he was left unaware of the applicability of the ruling in Apprendi to

27  his own case until 2010 when the California Court of Appeal decided In re Watson, 181

28  Cal.App.4th 956 (2010), which led him to file a second round of state habeas petitions beginning

in September 2010.  However, petitioner does not indicate how this fact was caused by his

appellate counsel's earlier alleged failings.  Accordingly, petitioner's putative claim that his

appellate attorney's misconduct entitles him to equitable tolling is without merit.

B. Mental Incompetence

Petitioner's primary contention is that the delay in filing his federal petition was the result

of mental incompetence.  ECF No. 24 at 21.  A sufficiently serious mental impediment may

constitute an "extraordinary circumstance" beyond the petitioner's control for purposes of

equitable tolling.  Bills, 628 F.3d at 1097 ("[W]e . . . have long recognized equitable tolling in the

context of a petitioner's mental illness.").  Under the case law in this circuit, the court may apply

equitable tolling when a petitioner demonstrates the following:

(1) *First,* a petitioner must show his mental impairment was an "extraordinary
circumstance" beyond his control, . . . , by demonstrating the impairment was
so severe that either

(a) petitioner was unable rationally or factually to personally understand
the need to timely file, or

(b) petitioner's mental state rendered him unable personally to prepare a
habeas petition and effectuate its filing.

(2) *Second,* the petitioner must show diligence in pursuing the claims to the extent
he could understand them, but that the mental impairment made it impossible
to meet the filing deadline under the totality of the circumstances, including
reasonably available access to assistance.

Id. at 1099-1100 (citations omitted).  In evaluating such a claim, "the district court must: (1) find

the petitioner has made a non-frivolous showing that he had a severe mental impairment during

the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering

the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3)

determine whether the petitioner's mental impairment made it impossible to timely file on his

own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise

diligent in attempting to comply with the filing requirements."  Id. at 1100-01.  With regard to the

diligence consideration, "the petitioner must diligently seek assistance and exploit whatever

assistance is reasonably available."  Id. at 1101.  "[A] petitioner's mental impairment might

12

1  justify equitable tolling if it interferes with the ability to understand the need for assistance, the

2  ability to secure it, or the ability to cooperate with or monitor assistance the petitioner does

3  secure.  The petitioner therefore always remains accountable for diligence in pursuing his or her

4  rights." Id. at 1100.

5         In his verified opposition, petitioner alleges the following in support of his contention that

6  he suffers from a mental impairment sufficient to entitle him to equitable tolling of his claims:

7
8
9
10
11
> Petitioner alleges that his mental health problems began as a teenager at the age of 16 years old.  His erratic, self-defeating abnormal behavior had escalated so intensively, that it led his mother and family to report it to a psychologist, with which led to his hospitalization for emergency measures for a period of 30 days. Petitioner's diagnosis was classified as a bipolar personality disorder.  This has been the case until this day as the disorder worsened over the years.

12
13
14
> Petitioner moved from California to the state of Connecticut until, at the age of 19 years old, his mental impairment worsened, leading to his first attempt at committing suicide where he ingested a multitude of pills for the goal.  This led to a second round of hospitalization.

15
16
17
18
19
> In the year 1999, petitioner began to entertain erratic abnormal behavior and was offered to participate in the Men's Support Group at CSP-SAC (New Folsom), in an effort to look into his emotional issues.  His behavior summoned the attention of other inmates at the prison, who eventually encouraged him to report his behavior to the mental health professionals; however, petitioner did not report anything until 2001, leading him to wrestling with suicidal thoughts again.  Petitioner was since then admitted into the California Department of Corrections & Rehabilitation's mental health program entitled, Clinical Case Management System (CCCMS).

20
21
22
23
24
> Petition [sic] was prescribed psychiatric medication: between 2001 to 2003 – beginning with 25 mg. of mirtazapine and uplifting it to 50 mg.  Between 2003-2007 – his medication changed to 100 mg of triloptal.  After none of these medications were having an effect in an overall way, petitioner stopped taking any medications between 2007 to [sic] 2009.  Finally, in 2009, until present, the mental health department found the proper psychiatric medication, at least it appears so, until present – 125 mg., and again after this, 125 mg, then 150 mg, and finally he's currently at 200 mg.

25
26
27
28
> Petitioner's mental health began to worsen in the year when he entertained strong suicidal thoughts again in 2013, leading to a higher mental health classification and housing, from CCCMS to the Enhanced Outpatient Program (EOP) until present.  The new care requires a drastic difference from CCCMS level of care. Petitioner alleges that when he reports to medical staff versus what he goes through personally, has been problematic for him because

1
2
3
4
5

> he is not cognizant that he has to report the behavior that his peers
> witness, with which began in CDCR 1999, although finally
> worsening and reporting it in 2001. This has been the case even
> when he was in society at large during his teenage years. He holds
> in issues that eventually explodes [sic] into suicidal attempts and
> thoughts. Although petitioner did not take any psychotropic
> medications between the years 2007 and 2009, he remained a part
> of the CCCMS mental health program and all aspects of its care.

6  ECF No. 24 at 29-31, Exhibit A. Petitioner further alleges that it has taken years for him to

7  discover the correct dosage of medication to take, that he suffered without medication between

8  2007 and 2009, and that he experienced psychological issues between 1999 and 2001 that were

9  similar to the ones he suffered between 2007 and 2009 when he was not taking medication. Id. at

10  32.

11        Petitioner submits as an additional exhibit a declaration by Stanley J. Finney, an inmate

12  legal assistant who helped petitioner draft and file his current petition, who declares that he has

13  personal knowledge of and experience with petitioner's alleged medical impairment through his

14  work with petitioner in the Men's Support Group at CSP-Sacramento. Id. at Exhibit B. Mr.

15  Finney further states that he has sought to create an evidentiary record of petitioner's mental

16  health issues and medications for the court to review in determining whether petitioner's mental

17  state constitutes an "extraordinary circumstance" for purposes of equitable tolling, but has been

18  unable to acquire the proper documents at this time due to petitioner's indigence. Id.

19        These allegations, even when taken as true, are inadequate to show that petitioner's mental

20  impairment caused his more than twelve-year delay in filing his current petition. Petitioner has

21  alleged no facts demonstrating a causal connection between his mental illness and his inability to

22  file a timely petition. Furthermore, petitioner fails to include any medical records or other

23  evidence that would suggest that his mental impairment was so severe that it kept him from filing

24  his federal habeas petition during the relevant time period. Cf. Henderson v. Allison, 2012 WL

25  3292010, at *7-9 (E.D. Cal. Aug. 13, 2012) (reviewing numerous mental health records in

26  assessing the petitioner's equitable tolling claim based on mental incompetence). "Without any

27  allegation or evidence of how petitioner's symptoms actually caused him not to be able to file

28  despite his diligence, the court cannot find that he is entitled to equitable tolling." Taylor v.

1   Knowles, 2009 WL 688615, at *6 (E.D. Cal. March 13, 2009), aff'd, 368 Fed. Appx. 796 (9th

2   Cir. 2010) (no equitable tolling where petitioner failed to show his auditory hallucinations, severe

3   depression, and anxiety "actually caused him not to be able to file despite his diligence"); see

4   Henderson v. Allison, 2012 WL 3292010 (E.D. Cal. Aug. 13, 2012) (denying petitioner's

5   equitable tolling argument based on mental incompetence because petitioner made no allegations

6   demonstrating a causal connection between petitioner's alleged depression and adjustment

7   disorder and his inability to timely file a federal petition); see also Howell v. Roe, 2003 WL

8   403353, *4 (N.D. Cal. Feb. 20, 2003) (rejecting equitable tolling where petitioner's suicidal

9   nature and depression did not make him mentally incompetent).  Moreover, the fact that petitioner

10  filed seven state court petitions during the period for which he seeks tolling demonstrates that his

11  mental illness did not, in fact, make filing impossible.

12         Petitioner argues in a separate motion filed September 3, 2013 (ECF No. 35) that, even if

13  the current record includes insufficient evidence of mental incompetence to support equitable

14  tolling, he is entitled to an evidentiary hearing on the matter under Laws v. Lamarque, 351 F.3d

15  919 (9th Cir. 2003).  In Laws, the prisoner alleged that mental incompetence "deprived [him] of

16  any kind of consciousness," thus preventing him from timely filing a petition.  Id. at 921.  The

17  Ninth Circuit noted that the record supported the petitioner's allegation because prior to the trial

18  of the underlying criminal case, the state trial court had "expressed concern about [petitioner's]

19  competency and ordered psychiatric examinations and a hearing under California Penal Code §

20  1368."  Id.  Further, the court noted that numerous psychiatrists had been appointed to examine

21  the petitioner, and they offered conflicting opinions about his mental competency to stand trial.

22  Id.  Under these circumstances, the court held that an expansion of the record was necessary to

23  determine whether equitable tolling was warranted.  Id. at 921, 924.

24         Laws is distinguishable, and does not suggest that expansion of the record is warranted in

25  this case.  Unlike in Laws, where the petitioner alleged that his mental condition "deprived him of

26  any kind of consciousness" during the relevant tolling period, petitioner in this case has not

27  explained how his mental state made it impossible for him to file a timely federal habeas petition.

28  See Washington v. McDonald, 2010 WL 1999469 at * 2 (C.D. Cal. Feb. 19, 2010).  Also unlike

1    Laws, petitioner points to nothing in his trial record or correctional records indicating possible

2    legal incompetence at any time.  Petitioner identifies no facts that, if true, would support a

3    conclusion that his specific mental impairments or psychiatric symptoms have interfered with his

4    functioning in ways that implicate the ability to prepare and file a petition, the ability to

5    understand the need to timely file, or the ability to seek assistance.[10]  See Bills, 628 F.3d at 1099-

6    1100.

7            The allegations in petitioner's opposition suggest that at some point between May 2, 2000

8    and May 2, 2001, the one-year limitations period in which petitioner had to file his federal

9    petition under section 2244(d)(1)(A), petitioner was possibly admitted into the CCCMS level of

10   care at CSP-Sacramento and had begun to take the medication Mirtazapine.  ECF No. 32 at 30.

11   Assignment to the CCCMS level of care, without more, does not support equitable tolling

12   because it "suggests that petitioner was able to function despite his mental problems."  Henderson

13   v. Allison, 2012 WL 3292010 at *9 (E.D. Cal. Aug. 13, 2012).  While petitioner's further

14   allegations suggest that his mental condition has worsened in the years between the end of the

15   limitations period and his filing of the current petition, these allegations are insufficient even if

16   true to support equitable tolling.  See Laws, 351 F.3d at 921, 924 (hearing necessary because

17   petitioner's allegations, if true, would entitle him to equitable tolling).

18           The fact that petitioner was able to file seven habeas petitions in state court during the

19   years for which he seeks tolling ultimately defeats his argument.  See  Brown v. McKee, 232

20   F.Supp.2d 761, 768 (E.D. Mich. 2002) (rejecting a claim that mental illness and use of prescribed

21   psychotropic medication warranted equitable tolling where the petitioner was able to file several

22   actions during period of alleged mental incapacitation, and explaining that "[t]he exceptional

23   circumstances that would justify equitable tolling on the basis of mental incapacity are not present

24   when the party who seeks the tolling has been able to pursue his or her legal claims during the

25   period of his or her alleged mental incapacity").  Even if petitioner required the assistance of

26   _____

27   [10] Nothing in the trial court record suggests that petitioner's mental state was seen as a cause for
     concern.  See, e.g., Lodged Document No. 17 (Probation Officer's Report and Recommendation)

28   at 14 (stating that petitioner had graduated high school with a "C" average, was planning on
     continuing his education, and reported being in good physical and emotional health).

1   other inmates to file those petitions, the availability of such assistance and petitioner's apparent

2   ability to utilize that assistance weigh against equitable tolling.  See Bills, 628 F.3d at 1100-01.

3          For all these reasons, petitioner has not made a "good-faith allegation that would, if true,

4   entitle him to equitable tolling" on the basis of his mental competency.  Laws, 351 F.3d at 921.

5   Further development of the record therefore is not warranted.  See Davis v. Farwell, 253

6   Fed.Appx. 631, 632 (9th Cir. 2007) (distinguishing Laws, and denying the petitioner's request for

7   an evidentiary hearing "to demonstrate in better fashion just how his below-average intelligence

8   caused his untimely filing," reasoning that the petitioner had not made a "good-faith allegation

9   that would, if true, entitle him to equitable tolling"), cert. denied, 552 U.S. 1286 (2008);

10  Humphrey v. Clark, 2010 WL 148199, *6 (C.D. Cal. 2010) (distinguishing Laws, and finding

11  development of the record was not warranted on the petitioner's allegation that he was entitled to

12  equitable tolling for mild mental retardation and functional illiteracy).  Petitioner's assertion of

13  equitable tolling should be rejected.  In addition, for the same reasons, petitioner's September 9,

14  2013 motion for an evidentiary hearing on this issue (ECF No. 35) should be denied.

15         C.  Law Library Deficiencies

16         Finally, petitioner alleges that the inadequacy of the law library at California State Prison-

17  Sacramento ("CSP-Sacramento"), where he was housed between the finality of his conviction and

18  the filing of the current petition, impeded timely filing.  ECF No. 24 at 32-34.  Petitioner's

19  allegations regarding the deficiencies of the prison law library are intended to demonstrate that he

20  acted diligently in spite of the extraordinary circumstances posed by his mental incompetence.

21  ECF No. 24 at 33-34.  Because the court has rejected petitioner's equitable tolling theory based

22  on mental incompetence, this diligence argument is unavailing.  Nevertheless, because petitioner

23  contends that the law library's deficiencies impeded his efforts to file the federal petition, the

24  undersigned considers whether the alleged facts support equitable tolling in their own right.

25         Petitioner identifies three law library deficiencies that allegedly caused him to delay filing

26  his federal habeas petition until after the statute of limitations had run.  First, he argues that the

27  law library held insufficient legal resources.  ECF No. 24 at 33.  However, petitioner's

28  acknowledgement that a copy of the AEDPA was present in the library, see id., and the fact that

17

1    petitioner was able to submit seven state habeas petitions over the course of the more than ten

2    years before he filed his current petition, defeat this basis for tolling.  See Lewis v. Casey, 518

3    U.S. 343, 355 (1996) (holding that the United States Constitution requires that inmates be

4    provided with the legal resources they "need in order to attack their sentences, directly or

5    collaterally, and in order to challenge the conditions of their confinement").

6           Next, petitioner argues that the law library "access scheme" improperly limited his access

7    to legal materials from 1999 until 2009.  ECF No. 24 at 33-34.  Specifically, petitioner claims that

8    the limited capacity of the library allowed for between five and seven inmates at a time, which

9    made access problematic for petitioner.  Id.  This restriction is not the type of extraordinary

10   circumstance which will support equitable tolling.  See Lindquist v. Idaho State Bd. of Corr., 776

11   F.2d 851, 858 (9th Cir. 1985) ("[T]he Constitution does not guarantee a prisoner unlimited access

12   to a law library. . . . The fact that an inmate must wait for a turn to use the library does not

13   necessarily mean that he has been denied meaningful access to the courts.") (citations omitted).

14   Furthermore, as respondent points out, this purportedly limited access to the prison's law library

15   has not kept petitioner from filing seven separate petitions for writ of habeas corpus in state court

16   between 2001 and 2011.  For these reasons, the court finds petitioner's contention unpersuasive.

17          Petitioner also claims that he was unable to file his current petition in a timely fashion

18   because he had received erroneous advice from the inmate law clerks at CSP-Sacramento

19   regarding his filing deadline under the AEDPA.  ECF No. 24 at 34.  However, "the Ninth Circuit

20   has made clear that erroneous advice regarding the limitations period 'do[es] not constitute

21   extraordinary circumstances sufficient to warrant equitable tolling.'"  Aparicio-Lopez v. United

22   States, 2013 WL 1010478 (C.D. Cal. Mar. 13, 2013) (quoting Miranda v. Castro, 292 F.3d 1063,

23   1067-68 (9th Cir. 2002)); see also Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001).

24          For the foregoing reasons, petitioner fails establish entitlement to equitable tolling of the

25   statute of limitations.  Accordingly, petitioner's claims are untimely and defendants' motion to

26   dismiss should be granted in full.

27   V.  Change of Respondent

28          Since the time that petitioner filed his current petition, he has been moved from

18

1    CSP-Sacramento to Corcoran State Prison.  See ECF No. 12.  Respondent has informed

2    the court that the current Warden of Corcoran State Prison is Connie Gipson.  ECF No. 15

3    at 1 n.1.  Because Connie Gipson is the individual who now has custody of petitioner at

4    Corcoran State Prison, the caption of this case will be changed pursuant to Rule 25(d) of

5    the Federal Rules of Civil Procedure to reflect the proper party respondent.  See

6    Brittingham v. United States, 982 F.2d 378, 397 (9th Cir. 1992).

7    VI.  Conclusion

8         Because all of petitioner's claims were filed outside the applicable limitations period, and

9    are not saved by any tolling provision or miscarriage of justice exception, they are time-barred.

10   For the reasons explained above, petitioner's motion for an evidentiary hearing regarding

11   equitable tolling (ECF No. 35) should be denied.  Additionally, because the petition must be

12   dismissed as untimely, all of petitioner's other currently pending motions, namely his Motion for

13   Discovery (ECF No. 25), Motion to Expand the Record (ECF No. 32), and "Motion and Request

14   for Service of Subpoena Duces Tecums" (ECF No. 33), should be denied as moot.

15        Accordingly, IT IS HEREBY ORDERED that

16        1. The Clerk of Court is directed to change the name of respondent to Connie Gipson; and

17        IT IS HEREBY RECOMMENDED that

18        1.  Respondent's March 21, 2013 Motion to Dismiss (ECF No. 15) be granted in full;

19        2.  Petitioner's June 26, 2013 Motion for Discovery (ECF No. 25) be denied;

20        3.  Petitioner's August 14, 2013 Motion to Expand the Record (ECF No. 32) be denied;

21        4. Petitioner's August 14, 2013 motion styled as "Motion and Request for Service of

22   Subpoena Duces Tecums" (ECF No. 33) be denied;

23        5. Petitioner's September 3, 2013 Motion for an Evidentiary Hearing (ECF No. 35) be

24   denied;

25        6. The Clerk of court be directed to close this case.

26        These findings and recommendations are submitted to the United States District Judge

27   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

28   after being served with these findings and recommendations, any party may file written

19

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 3, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE